UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

JERRY GIFFORD              )
                          )
v.                        )        4:12-cv-18/4:10-cr-32
                          )        *Judge Mattice*
UNITED STATES OF AMERICA   )

**<u>MEMORANDUM</u>**

Jerry Gifford ("Gifford"), has filed a motion for post-conviction relief under 28 U.S.C. § 2255 (Criminal Doc. 46).[1] Gifford contends his sentence should be vacated, set aside, or corrected because counsel was ineffective in several respects, namely that he failed to file an appeal, argue his role in the offense was minor, challenge the drug amount attributed to Gifford, request a downward departure based on Gifford's drug dependency, and "investigate the element 'inter-state or inter-tra-state,' commerce as insufficient establishe [sic] federal nexus[.]" (Criminal Doc. 46).     Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, the Court finds they show conclusively Gifford is not entitled to relief on the claims asserted.    Accordingly, the Court will decide the matter and explain the reasons Gifford's asserted grounds for relief are without merit, without requiring the government to file an answer and without an evidentiary hearing.    *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993) and Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts.

---

[1]     Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

## I.    28 U.S.C. § 2255 – STANDARD OF REVIEW

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ."  28 U.S.C. § 2255.  Under Rule 4 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.  *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing."  *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  *Reed v. Farley*, 512 U.S. 339, 353 (1994);

*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Hill v. United States,* 368 U.S. 424, 428 (1962); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied sub nom. Roy Charles Williams, Sr. v. United States*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error a movant is required to show a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. at 354; *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

"On collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (*quoting Brecht v. Abrahamson*, 507 U.S. at 637). "It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair*, 157 F.3d at 430, (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). A defendant must show a "fundamental defect" in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error which violates due process in order to prevail under 28 U.S.C. § 2255. *See Fair*, 157 F.3d at 430; *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).

## II.      PROCEDURAL BACKGROUND

On August 10, 2010, a Grand Jury sitting in the Eastern District of Tennessee returned an eight-count indictment charging Gifford and his co-defendant, Shannon Clark ("Clark"), with drug related crimes (Criminal Doc. 1). Gifford was charged in seven of the Counts. In Count One Gifford and Clark were charged, with others known and unknown to the Grand Jury, with conspiracy to manufacture five grams or more of methamphetamine (actual) and fifty grams or more of a mixture and substance containing methamphetamine, in violation of Title 21 U.S.C. § 841(a)(1), (b)(1)(B) and 846. Count Two charged Gifford with being aided and abetted by another, knowingly and intentionally possessing pseudoephedrine and knowing and having reasonable cause to believe it would be used to manufacture methamphetamine in violation of Title 21 U.S.C. § 841(c)(2) and Title 18 U.S.C. § 2. Counts Three and Seven charged Gifford and Clark with possession of equipment, chemicals, products, and materials having reason to believe they would be used to manufacture methamphetamine in violation of Title 21 U.S.C. § 843(a)(6) and Title 18 U.S.C. § 2. Counts Four and Eight charged Gifford and Clark with attempting to manufacture methamphetamine, in violation of Title 21 U.S.C. §§ 846 and 841(b)(1)(C) and Title 18 U.S.C. § 2. Count Six charged Gifford with being a felon in possession of a firearm in violation of Title 18 U.S.C. § 922(g) (Criminal Doc. 1).

Gifford pleaded guilty to Count One of the indictment pursuant to a plea agreement and after sentencing, Counts 2-4 and 6-7 were dismissed (Criminal Doc. 45, at 10). A Presentence Investigation Report ("PSR") was prepared and provided to the parties. The probation officer determined that Gifford qualified as a career offender

pursuant to the United States Sentencing Guidelines (USSG) § 4B1.1 and thus his total offense level was 34. Based on a total offense level of 34 and a criminal history category of VI, Gifford's guideline range was 262 to 327 months. This Court held a sentencing hearing on April 4, 2011, and sentenced Gifford to a term of 294 months imprisonment to be followed by an eight-year term of supervised release (Criminal Doc. 44).. Judgment was entered on April 8, 2011 (Criminal Doc. 44). Gifford waived his right to pursue an appeal of a guidelines sentence (Criminal Doc. 31, at 8). Gifford did not pursue an appeal. Gifford timely filed the instant § 2255 motion on March 6, 2012 (Criminal Doc. 46).

## III.  FACTUAL BACKGROUND

The following recitation of facts is taken from the offense conduct portion of the Presentence Investigation Report ("PSI")

13. On April 29, 2010, Sergeant Danny Mantooth of the Winchester Police Department observed Jerry Griffith pull into Walgreen's Pharmacy and a female exited his vehicle. The female went inside and came out a few minutes later. Mr. Gifford then pulled out of Walgreen's and headed North on 41-A. Investigator Ronnie Dunn was traveling South and observed the defendant was not wearing his seat belt. Sergeant Mantooth and Investigator Dunn stopped the vehicle. The officers questioned the passenger Paj Hunt during the stop. She advised she bought pseudoephedrine pills for Jerry Gifford. Mr. Gifford stated he was buying and trading pseudoephedrine because he needed the money. The officer's recovered Wal-Phed D Tablets which contained a total of 2.88 grams of pseudoephedrine.

14. On August 2, 2010, Investigator George Dyer, along with officers from the Franklin County Sheriff's Department, executed a search warrant at the residence of Candida Cleek (aka Candia Meade) and Jerry Gifford. While approaching the residence, they noticed a fire in the back yard. The officers located Jerry Gifford, Candida Cleek (aka Candia Meade), Matt Barnes, and Shannon Clark during the search. The officer asked Jerry Gifford where he was when the officers first approached. He advised that he [sic] standing out by the fire. Law enforcement located a black Playstation pouch containing hypodermic needles and methamphetamine.

5

The officers also found a 9mm handgun near where Jerry Gifford advised he was standing. The officers also located 9mm ammunition inside the residence.

15. Law enforcement observed that Mr. Gifford had green and black spray paint on his shirt and on his finger nails. He had needle marks on his arms and a rash on his neck and arms. The officers located a duffle bag, which had been painted green and black, about halfway up a tall pine tree in the side yard. There was a large amount of poison oak growing up the base of the tree. Inside the duffle bag, the officers located items used in the production of methamphetamine. The officers located the paint cans in a shed close to the fire. They also located items associated with firearms and methamphetamine production in the shed.

16. Inside the residence, officers located Jerry Gifford's cell phone, which contained photographs of methamphetamine manufacture. The officers also located a 2-liter bottle with black tape around the lid associated with methamphetamine production.

17. During an interview with law enforcement after the search, Shannon Clark admitted the methamphetamine lab belonged to her. She stated that the 9mm found belong to her and that she had traded methamphetamine for the firearm the night before the search. Ms. Clark recalled that she put the firearm in the grass before the Sheriff's Department got to the house. She indicated she is cooking at least two times per week, yielding 8 grams a cook (16 grams per week x 12 weeks = 192 grams). She advised she has been cooking on her own since May 2010. She reported, she told Jerry Wayne Gifford to paint the duffle bag.

18. During the interview with Jerry Gifford, he advised that his fingerprints may be on the gun, because something was wrong with the firing pin. He advised he sold cold pills or traded them for methamphetamine.

19. During an interview with Candia Cleek (aka Candia Meade), she advised she is three months pregnant and that Jerry had been living with her since May 2010. She advised the last time she used methamphetamine was three days prior to the search and she obtained the methamphetamine from Shannon Clark. She reported the methamphetamine lab found during the search belong to Jerry Gifford and Shannon Clark. She further indicated that Jerry keeps his methamphetamine lab in a backpack.

20. On August 6, 2010, Sherrill James from the Coffee County Sheriff's Department received information regarding a possible methamphetamine lab at 503 Rickenbacker Drive in Tullahoma, Tennessee. Deputy James contacted Agent Wendell Norton with the District Attorney's Office to

assist in going to the residence. Brent Tudor with the Tullahoma Police Department also assisted in the investigation.

21. Upon arrival, Deputy James and Agent Norton, observed Shannon Clark come and go back to the residence. While approaching the residence, the officers detected an odor associated with the manufacture of methamphetamine. Agent Norton and Deputy James went to the front of the residence and Officer Tudor went to the rear of the residence. Norton and James made contact with Sherri Tucker, who was the lessee of the apartment. They asked if Jerry Gifford was at the residence. She stated she did not know anyone by that name. The officers advised that Mr. Gifford's vehicle was parked out front. They asked and eventually received consent to search the premises. They located Jerry Gifford in the back upstairs bedroom lying on the bed. There were zip lock bags on the bed, five rolls of electrical tape, and he had a lithium battery in his pocket. In the front upstairs bedroom, officers located a cookie box which contained two empty pseudoephedrine boxes.

22. Downstairs, a lab was located in the washing machine. The lab was almost completed, except that lithium strips had not been added. Officers found Shannon Clark downstairs when they conducted their search. She advised she had just started to cut into one of the batteries when the officers came to the door. Officers also located a 20 ounce Mountain Dew bottle with muriatic acid, tubing, ice compress box, and digital scales in the washing machine.

23. Officer [sic] received consent to search Jerry Gifford's vehicle. They discovered a 32 ounce Coleman fuel bottle, aluminum foil, and two mason jars.

24. On August 7, 2010, Deputy Bryan Hill of the Franklin County Sheriff's Department was dispatched to 446 Farve Circle in regards to an assault which had occurred earlier on Dean Shop Road.  The officer spoke with Susan Coker and Chris Clark (Shannon Clark's brother). Mr. Clark advised they were driving on Dean Shop Road, when a gray 1980's model Oldsmobile Cutlass flashed its headlights at them. Mr. Clark stated he pulled to the side of the road and that Jerry Gifford and Shannon Clark exited the Cutlass and approached their van. Mr. Clark reported that Shannon Clark reached inside the passenger window of their van and pulled Ms. Coker out by the hair. Ms. Coker began hitting Ms. Coker in the face. Mr. Clark reported he tried to break up the altercation, when Mr. Gifford struck Mr. Clark in the face with a baseball bat. Mr. Clark then stated that Mr. Gifford reached into their vehicle and took Mr. Clark's wallet containing approximately $265.00, Ms. Coker's purse containing $50.00, a handheld tazer, a GPS, a SportCat scanner, and a Verizon cell phone. Mr. Gifford and Ms. Clark made verbal threats to kill Mr. Clark and

Ms. Coker if they called the police. During the interview, Ms. Coker's phone rang and the caller was Shannon Clark, the officer was able to listen to the conversation. Ms. Clark made several more threats toward Ms. Coker and stated that she wanted Ms. Coker to return her pills or face more harm. Ms. Coker was a Confidential Informant and was taken to the hospital for her injuries.

25. Shannon Clark advised during a interview that "she beat up Susan Coker for setting her up and she stole her stuff because of all the trouble she went through."

26. On August 9, 2010, Investigator George Dyer and Mike Bell of the Franklin County Sheriff's Department received a complaint that Jerry Gifford was back at a residence that had been previously quarantined. The complainant advised that he observed Jerry Gifford crawl underneath the house and had a bag with him. Upon arrival, the officers observed Jerry Gifford standing at the back of the residence. The back door was open and there was a power cord coming from inside the house to a police radio scanner that was located on top of the car. The officers observed Shannon Clark sitting in the vehicle. Officers made contact with Mr. Gifford and he gave consent to search the vehicle. There were several items of drug paraphernalia located. Officers located a hypodermic needle in Mr. Gifford's pocket and found a small silver canister containing bags of while powder reside.

27. The search revealed several items related to the manufacture of methamphetamine and items of stolen property stemming from an alleged robbery and theft from an earlier date. There were throwing knives and a baseball bat less than six feet away from Mr. Gifford.

28. According to TMIS, the defendant, through Ms. Hunt, purchased 2.88 grams of pseudoephedrine (28.80 kilograms of marijuana), which would yield a base offense level of 18 (based upon 1 gram of pseudoephedrine = 10 kilograms of marijuana).

29. Mr. Gifford admits, pursuant to his plea agreement, that he conspired to manufacture, more than five (5) grams or more of methamphetamine (actual) or fifty(50) grams or more of a mixture and substance containing a detectable amount of methamphetamine within the Eastern District of Tennessee. Therefore, five (5) grams of methamphetamine (actual) or five hundred (50) [sic] grams of a mixture of methamphetamine will be used to calculate the defendant's base offense level.

30. However, Mr. Gifford has pled guilty to a felony controlled substance offense after sustaining at least two prior felony drug and crimes of violence convictions. Therefore, his offense level in this case is

determined to be 37, pursuant to USSG §4B1.1, due to the fact the defendant is a Career Offender.

(PSR).

## IV.    ANALYSIS

Gifford contends he received ineffective assistance of counsel. Gifford raises five instances of alleged ineffective assistance of counsel (Criminal Doc. 46). In this § 2255 proceeding, the burden is on Gifford to prove he is entitled to relief. *Owen v. United States*, 660 F.2d 696, 702 (6th Cir. 1981). A motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Short v. United States*, 504 F.2d 63 (6th Cir. 1974). Gifford has failed to provide any factual support for any of his claims in violation of Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Court. Therefore, the Court concludes that, devoid of any factual support, Gifford's allegations are insufficient to support a request for relief under § 2255. *See Oliver v. United States*, 961 F.2d 1339, 1343 n. 5 (7th Cir. 1992) ("No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, ...").

Nevertheless, although Gifford's § 2255 motion does not comport with Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts, in that he has failed to state the facts supporting each ground, liberally construing this *pro se* motion, the Court will address each claim, to the extent possible, based on the limited information Gifford provided.

**A. Applicable Law**

The Supreme Court has established a two-part test for determining whether an ineffective assistance of counsel claim is meritorious in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong of the *Strickland* test requires Gifford to show that his attorney's representation was deficient, i.e., fell below an objective standard of reasonableness. Gifford must show his counsel made such serious errors that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U .S. at 687-88; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir.1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir.1995); *United States v. Medved*, 905 F.2d 935, 942 (6th Cir.1990).

The second prong of the *Strickland* test requires the movant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In plea proceedings, the movant must show a reasonable probability that but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer,* 64 F.3d 110, 118 (3rd Cir., 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation

that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under Strickland). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id*. at 697.

At the outset, the Court determines Gifford has failed to satisfy his burden as to the prejudice component as to all five alleged instances of ineffective assistance of counsel. Gifford's factually deficient motion does not address the prejudice prong of

*Strickland.*  Gifford simply requests that the Court vacate his sentence (Criminal Doc. 46).   Consequently, Gifford has not met his burden under *Lockhart v. Hill*, which requires a defendant to demonstrate a reasonable probability that he would have gone to trial.  Accordingly, Gifford has not demonstrated a reasonable probability that but for counsel's alleged errors, he would have gone to trial.

In sum, Gifford's motion on its face fails to state a claim under the *Hill* test, because it is devoid of any assertion that but for the alleged errors of counsel, Gifford would not have pleaded guilty and would have insisted on going to trial.  *Id.* at 60 ("Because petitioner in this case failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test [in challenging a guilty plea], the district court did not err in declining to hold a hearing on [his] ineffective assistance of counsel claim.").  Given the facts concerning the strength of the government's case against Gifford and the benefit he received by pleading guilty (three level reduction for acceptance of responsibility and dismissal of all but Count One), it is unlikely he would have insisted on going to trial.   Nevertheless, the Court will examine the merits of Gifford's claims despite his failure to plead the prejudice required under *Hill* or provide the factual support as required by the rules governing § 2255 proceedings.

But first the Court notes that most of Gifford's claims are barred from review pursuant to his plea agreement.  Gifford's signed plea agreement includes the following acknowledgment:

> "[T]he defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction(s) and/or resulting sentence.  The parties agree that the defendant retains the right to raise, by way of collateral review

under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct *not known to defendant by the time of the entry of judgment.*"

(Criminal Doc. 240, p. 8) (emphasis added).

"It is well settled that a defendant in a criminal case may waive any right, even a constitutional right[.]" *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir.2004) (internal quotation marks and citation omitted). The right to appeal and the right to seek post-conviction relief are statutory rights that may be waived. Thus, plea agreements that include waivers of § 2255 rights are generally enforceable if the defendant entered into the waiver agreement knowingly, intelligently, and voluntarily. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001); *also see Watson v. United States*, 165 F.3d 486, 489 N. 4 (6th Cir. 1999). In other words, a knowing and voluntary waiver in a plea agreement not to file any motions or pleadings pursuant to 28 U.S.C. § 2255 is an effective means to bar such relief. *Id.* at 451; *also see Palmero v. United States*, 101 F.3d 702 (6th Cir., Nov. 21, 1996) (unpublished table decision) 1996 WL 678222, at *2; *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996); *United States v. Ashe*, 47 F.3d 770, 775 (6th Cir.), *cert. denied*, 516 U.S. 859 (1995); *United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994).

Here, Gifford does not claim he did not enter a voluntary and knowing guilty plea. Moreover, the plea agreement which he signed reflects his plea was voluntary and knowingly, and United States Magistrate Judge Susan K. Lee so found during the plea hearing (Criminal Doc. 31–Plea Agreement, at 8-9; Doc. 33−Report and Recommendation). The record clearly demonstrates Gifford was aware of all of the issues he raises prior to entry of his judgment, except his claim regarding counsel's failure to file an appeal. Notably, Gifford waived his right to file an appeal in his plea

agreement.  Although Gifford's claims are barred from review pursuant to the plea agreement, the Court will address each claim below.

**B.    Claims**

The thrust of Gifford's claims addressing the performance of his trial counsel include several alleged instances of counsel's deficient performance with no explanation of how these actions or inactions prejudiced him.  Gifford raises the following five claims of ineffective assistance of trial counsel:  (1) Counsel failed to file a notice of appeal (2) counsel failed to argue Gifford's role in the offense was minor;[2]  (3)  Counsel failed to challenge the drug amount attributed to him; (4)  counsel failed to request a downward departure based on Gifford's alleged drug dependency; and (5) counsel failed to investigate the "'inter-state or inter-tra-state' commerce as insufficient establishe [sic] federal nexus constitute ineffective assistance of counsel." (Criminal Doc. 46).   No factual support was supplied for any of these claims.

1.    *Failure to File An Appeal*

Gifford claims counsel failed to file an appeal.  The plea agreement entered by Gifford contains a waiver of appeal clause that reads as follows:   "[T]he defendant agrees not to file a direct appeal of the defendant's conviction(s) or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range or any applicable mandatory minimum sentence (whichever is greater) determined by the district court." (Criminal Doc. 31, at 8, ¶ 14(a)).    Before recommending that the undersign accept the plea, United States Magistrate Judge Susan K. Lee conducted a thorough hearing and found Gifford's plea was made

---

[2]    Presumably, Gifford is claiming he was entitled to a mitigating role adjustment pursuant to USSG § 3B1.2 (b), which provides for a two level decrease if the defendant was a minor participant.

knowingly, voluntarily, and with full understanding of each of the rights he waived (Criminal Doc. 33). Thus, it is documented clearly in the record that Gifford entered into the plea agreement and waived his right to appeal both knowingly and voluntarily. In fact, Gifford's § 2255 motion makes no assertions to the contrary.

At sentencing, not only did the Court accept the plea agreement, it sentenced Gifford within the sentencing guideline range (Criminal Doc. 45−Judgment Proceedings Transcript, at 2, 7-8). Thus, given the plea agreement clearly and unequivocally provided that Gifford waived his right to appeal any sentence within or below the prescribed guidelines, and he entered into the agreement knowingly and voluntarily, such a waiver is fully enforceable and no § 2255 relief is warranted on this claim. Nevertheless, even assuming counsel was deficient for failing to file an appeal, which he was not, Gifford has not demonstrated he suffered any prejudice. Accordingly, because Gifford waived his right to pursue an appeal, relief will be **DENIED** on his claim that counsel failed to file an appeal.

2. *Failure to Argue Minor Participant*

Gifford asserts counsel was ineffective for failing to argue for a two level decrease for his alleged mitigating role as a minor participant in the offense pursuant to USSG § 3B1.2(b). Gifford does not present any reasons or facts that counsel should have advanced to establish he was a minor participant. Aside from the fact that Gifford waived his right to raise this claim, the record clearly shows, beyond dispute, that Gifford did not qualify for a minor role adjustment. A minor participant is described in the application notes to § 3B1.2 as a person "who is less culpable than most other participants, but whose role could not be described as minimal." Gifford's plea and the

facts contained in the PSR reflect he played a significant role in the manufacturing of methamphetamine.

In his plea agreement, Gifford stipulated that he joined a conspiracy and agreed to manufacture methamphetamine with others. Gifford would obtain necessary ingredients for the manufacture of methamphetamine, supply those ingredients to others to manufacture methamphetamine, and he manufactured and assisted the manufacture of more than five grams of methamphetamine (actual) and more than fifty grams of a mixture and substance containing methamphetamine (Criminal Doc. 31, at 2-3).

In addition, the PSR reflects that on April 29, 2010, Gifford was pulled over for a traffic violation and when an officer questioned Gifford's passenger, she advised she bought pseudoephedrine pills for him. Gifford explained he was buying and trading pseudoephedrine because he needed the money. On August 2, 2010, when law enforcement executed a search warrant at the residence of Candida Cleek (aka Candia Meade) ("Cleek") and Gifford, Cleek reported the methamphetamine lab found during the search belonged to Gifford and Clark. Considering all the facts contained in the PSR along with the facts contained in Gifford's plea agreement, the evidence simply does not support a finding that Gifford was entitled to a minor role adjustment.

Gifford makes no mention of the evidence that justifies a minor role adjustment and the record contains no such evidence. Gifford's vague, unsubstantiated claim that counsel failed to argue for a minor role adjustment is insufficient to demonstrate he is entitled to any relief. To meet his burden of proof, Gifford must demonstrate a reasonable probability that the Court would have found his role to be minor by a

preponderance of the evidence had counsel presented such an argument. This, Gifford cannot do.

Even if counsel's failure to make such an argument was deficient, which the Court does not find, Gifford has failed to demonstrate he suffered any prejudice because the facts contained in his PSR and his plea agreement clearly demonstrate he had a fairly significant role in the drug conspiracy and was more than a minimal or minor participant in the conspiracy to manufacture methamphetamine. Thus, even if counsel had argued for a mitigating role deduction, the Court would have rejected the argument, as the evidence in the record does not demonstrate Gifford is "less culpable that most other participants." USSG § 3B1.2, Application Note 5.

"The critical inquiry is thus not just whether the defendant has done fewer bad acts than his codefendants, but whether the defendant's conduct is material or essential to committing the offense." *United States v. Pratt,* 239 F.3d 640, 646 (4th Cir. 2001) (internal punctuation and citation omitted). Gifford's actions of purchasing or having others purchase for him, pseudoephedrine pills were essential to manufacturing methamphetamine. In addition, storing methamphetamine and a methamphetamine lab at his home, and a 32 ounce Coleman fuel bottle, aluminum foil, and two mason jars in his vehicle demonstrates his involvement was more than a minor participant (PSR, ¶ 13-30). Finally, manufacturing and assisting in the manufacture of more than five grams of methamphetamine (actual) and more than fifty grams of a mixture and substance containing methamphetamine was integral to the criminal activity and not a minor role (Criminal Doc. 31, at 3−Plea Agreement). Thus, counsel's failure to argue for a minor role reduction had no prejudicial effect on Gifford's sentence.

In light of Gifford's actual role in the offense and his inability to demonstrate prejudice, counsel was not ineffective for failing to raise the minor participant argument. Accordingly, relief will be **DENIED** on this alleged instance of ineffective assistance of counsel on the grounds of both waiver and lack of merit.

3.    *Failure to Challenge Drug Amount*

Next, Gifford faults counsel for failing to contest the drug amount attributed to him.  Gifford, however, fails to identify what amount he contends should be attributed to him.  In addition to being waived, this claim is without merit as Gifford stipulated in his plea agreement that he manufactured and assisted in the manufacture of more than five grams of methamphetamine (actual) and more than fifty grams of a mixture and substance containing methamphetamine (Criminal Doc. 31).

Absent clear and convincing evidence to the contrary, Gifford is bound by his plea agreement and representations he makes under oath during a plea colloquy.  In *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977), Supreme Court explained the importance and weight of representations made during the plea hearing as follows:

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Although the plea hearing has not been transcribed, Gifford clearly agreed to the amount of drugs attributed to him in his plea agreement and United States Magistrate Judge Susan K. Lee conducted a hearing and concluded he freely, voluntarily, and knowingly entered into the plea agreement, "understanding the nature of the charge and

penalties provided by law; and the plea has a sufficient basis in fact." (Criminal Doc. 33). Here, Gifford presents no evidence that suggests the representations in the plea agreement are incorrect, or that any representation made under oath during his plea colloquy were untruthful or involuntary. Therefore, Gifford is bound by his plea agreement and his sworn statements.

Gifford has not presented any allegations or evidence from which the Court may even infer counsel performed deficiently by failing to contest the drug amount attributed to Gifford. Notably, Gifford stipulated to the drug amount attributed to him in his plea agreement and had counsel challenged the amount during sentencing, such an argument could well have resulted in the rejection of the three (3) level reduction for acceptance of responsibility. Nevertheless, even assuming for the sake of discussion that counsel's failure to challenge the amount of drugs attributable to Gifford was deficient, there has been no showing of prejudice.

Accordingly, because Gifford has not demonstrated counsel's conduct fell below an objective standard of reasonableness or that counsel's decision not to challenge the drug amount attributed to Gifford resulted in prejudice, relief will be **DENIED**.

4. _Failure to Request Downward Departure Based on Drug Dependency_

In his fourth alleged instance of ineffective assistance of counsel, Gifford faults counsel for failing to argue for a downward departure based on his drug dependency. USSG § 5H covers specific offender characteristics and § 5H1.4 applies to physical condition, including drug and alcohol dependence and abuse and gambling addiction. Specifically, § 5H1.4 provides in pertinent part as follows:

Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. . . .

Drug or alcohol dependence or abuse ordinarily is not a reason for a downward departure. Substance abuse is highly correlated to an increased propensity to commit crime. Due to this increased risk, it is highly recommended that a defendant who is incarcerated also be sentenced to supervised release with a requirement that the defendant participate in an appropriate substance abuse program (see §5D1.3(d)(4)). If participation in a substance abuse program is required, the length of supervised release should take into account the length of time necessary for the probation office to judge the success of the program.

In certain cases a downward departure may be appropriate to accomplish a specific treatment purpose. . . .

Gifford has failed to provide any facts to support his claim that counsel was ineffective for failing to argue his substance dependency justified a downward departure. Gifford's failure to offer any reason to believe his substance dependency would have qualified for a downward departure renders his claim meritless. Not only has Gifford failed to demonstrate his substance dependency is distinguishable in such a way that would justify a downward departure, the record demonstrates he is unable to do so. When the Court imposed Gifford's sentence, it was well aware of his substance abuse issues as they were addressed in the PSR. (PSR, ¶ 92-93). In addition, during sentencing counsel mentioned Gifford's health condition, and the fact he was introduced to alcohol at the age of eight and had been in treatment. Finally, in his statement to the Court, Gifford stated, "And I'm really sorry for [being] out there playing games with my addiction. I knew I had one. I knew I couldn't beat it. . . . " (Criminal Doc. 45).

Having thoroughly reviewed the PSR prior to the sentencing hearing, the Court realized Gifford had a substance abuse issue and had already concluded his participation in the 500 hour substance abuse program was necessary. Indeed, the Court notified counsel at the beginning of counsel's statement that it was going to recommend Gifford participate in the 500 hour substance abuse treatment program (Criminal Doc. 45, at 5). In addition to recommending that Gifford receive 500 hours of substance abuse treatment from the Bureau of Prisons' Institutional Residential Drug Abuse Treatment Program, the Court ordered him to participate in a program of testing and/or treatment for drug and/or alcohol abuse, while on supervised release as directed by the probation officer. The Court further ordered Gifford to participate in a program of mental health treatment as directed by the probation officer.

Aside from Gifford's waiver of this claim pursuant to his plea agreement, his failure to provide any factual support to this claim, and the sentencing guidelines policy statement that "[d]rug or alcohol dependence or abuse ordinarily is not a reason for a downward departure[,]" § 5H1.4, it is clear Gifford sustained no prejudice as a result of counsel's failure to develop evidence of his substance addictions and to argue for a downward departure at sentencing on that basis. It is likewise clear that this omission by counsel does not rise to the level of constitutionally deficient performance as counsel is not required to raise issues reasonably considered to be without merit, *see Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"), and the failure to raise a meritless argument does not result in any prejudice. *Mahdi v. Bagley*,

522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim").

Accordingly, because Gifford has shown neither deficient performance nor prejudice with regard to his contention that counsel should have raised the issue of his substance dependency, relief will be **DENIED**.

5.      *Failure to Investigate Interstate or Intrastate Commerce*

Gifford's final claim is virtually indecipherable.  Gifford claims "[c]ounsel's failure to investigate the element "<u>inter-state or inter-tra-state</u>," commerce as insufficient establishe [sic] federal nexus constitute ineffective assistance of counsel."  (Criminal Doc. 46).  Presumably, Gifford is attempting to argue that Congress does not have authority to criminalize an attempt to manufacture or the manufacture of methamphetamine because the offense lacks a sufficient interstate nexus and fails to satisfy the federal jurisdictional nexus for affecting interstate commerce.

Gifford's conspiracy to manufacture methamphetamine is based on statutory sections within the Controlled Substances Act, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, and "the Controlled Substances Act is a valid exercise of Congressional power under the commerce clause."  *United States v. Davis*, 288 F.3d 359, 362 (8th Cir. 2002). In *United States v. Tucker,* 90 F.3d 1135 (6th Cir. 1996), the Sixth Circuit held that "drug trafficking is an 'economic enterprise' that substantially affects interstate commerce in numerous clear ways," and therefore may be regulated by Congress.  *Id.* at 1140.

In summary, Congress may regulate both the attempt to manufacture and the actual manufacturing of drugs under its commerce clause powers because of the effect that the drug activity has upon interstate commerce.  Moreover, "intrastate drug activity

affects interstate commerce and . . . Congress may regulate both intrastate and interstate drug trafficking under the Commerce Clause". *United States v. Patterson,* 140 F.3d 767, 772 (8th Cir. 1998). And finally, the Sixth Circuit has concluded Title 21 U.S.C. § § 841 and 846 are a valid exercise of Congress's Commerce Clause. *United States v. Davis*, 288 F.3d at 362.

Accordingly, aside from Gifford's waiver to raise this claim, there was proper jurisdiction, and Gifford's ineffective assistance of counsel claim will be **DENIED**.

## V. CONCLUSION

Gifford has failed to present any facts which establish his sentence is subject to collateral attack under 28 U.S.C. § 2255. Accordingly, Gifford is not entitled to any relief under § 2255 and a judgment will enter **DENYING** his motion.

E N T E R :

_____ */s/ Harry S. Mattice, Jr.* _____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE